MILDRED GILLETTE, Respondent, *v.* E. RONALD ALLEN, as President of The Meadowbrook Association, Appellant.

GEORGE GILLETTE, Respondent, *v.* E. RONALD ALLEN, as President of The Meadowbrook Association, Appellant.

Fourth Department, June 27, 1945.

442

*Abram R. Harpending* for appellant.

*John E. Keane* and *Melvin H. Zurett* for respondents.

LARKIN, J. These two actions are brought, one by Mildred Gillette, and the other, a derivative one, by her husband, George Gillette, to recover damages from the Meadowbrook Association, an unincorporated group of seven or more persons. The complaints state two causes of action, but based upon the same facts, one, in negligence, and the other, in nuisance. They were instituted pursuant to section 13 of the General Associations Law, naming the defendant Allen as the president of the association. Whether the association was formed to make money for distribution among its members, or for purely social purposes, is one of the issues raised by the answers.

It is conceded that the association held an annual picnic, which, in the year 1944, was held on July 15th, on a vacant lot in what was known as the Meadowbrook Tract, in the town of Brighton, county of Monroe. Defendant further admits that arrangements for this picnic were made by committees made up of members of the association, and that all the members and their guests were invited to attend, and that admission was by tickets sold for a consideration.

Mildred Gillette, having purchased a ticket, attended the 1944 picnic. Shortly before 11:00 P.M., while walking across the vacant lot toward a tent where food, refreshments generally, and entertainment were furnished to those in attendance, she stepped into a hole, as the result of which she was hurt. It is

to recover damages resulting from her injuries that these two actions are brought. It is claimed in the complaints, but denied in the answers, that the association controlled and operated the vacant lot. Defendant further denies any negligence, and the maintenance of a nuisance.

After the actions had been at issue for several months defendant moved to amend the answers by setting up as an affirmative defense the membership of each plaintiff in the association. This motion was denied by the Special Term on the ground that the defense was insufficient as a matter of law. From the order entered this appeal was taken. There was no claim of bad faith on defendant's part in making the motion.

Section 13 of the General Associations Law is almost verbatim a re-enactment of the last two sentences of section 1919 of the Code of Civil Procedure. The entire article, sections 1919–1924, regulated actions by and against unincorporated associations. It became part of the Code by chapter 178 of the Laws of 1880. Chapter 245 of the Laws of 1880 repealed chapter 258 of the Laws of 1849 and chapter 455 of the Laws of 1851, which had theretofore governed the practice in such actions. The earlier statute of 1849 applied exclusively to joint stock associations consisting of seven or more members, and permitted such associations to sue and be sued in the name of the president or treasurer. By chapter 455 of the Laws of 1851 the provisions of the act of 1849 were extended to any company or association composed of not less than seven persons, owners of or having an interest in any property, right of action or demand, jointly or in common, or liable to any action *on account* of *such ownership* or interest in same. The suits and proceedings which could be brought by joint stock associations by the act of 1849, were authorized to be brought and maintained, in the manner therein provided, by any company or association composed of not less than seven members.

An examination of this statute of 1851 will disclose a reason for the judicial confusion, as to its scope, which soon developed. That there was confusion is evidenced by the decisions prior to the enactment of the Code of Civil Procedure. Interesting, as showing the reason for its enactment, are the excerpts from the brief of the attorney for the respondent in *Tibbetts* v. *Blood,* decided by the Erie General Term of the Supreme Court, May 12, 1856, reported in 21 Barber 650. That these two statutes of 1849 and 1851 were purely procedural and were not intended to create any cause of action which did not exist under the substantive law of the State, there can be no question. Montgomery

H. Throop, one of the commissioners to revise the statutes, who probably had at least as much to do with the enactment of the Code of Civil Procedure as any individual — indeed, the practitioners of sixty-five years ago looked upon him as the father of the Code and not infrequently referred to it as " Throop's Code " — in his valuable notes to the Code of Civil Procedure makes this clear, and also expressly classifies the entire article First of title V as being remedial and procedural provisions only, not intended to work any change in the substantive law. In his note to section 1919 he calls attention to the inclusion of a partnership, having a president or treasurer, as being an association within the meaning of the section, and states that this was done to remove any doubt as to the scope of the section. It would be idle to suppose that by permitting a suit to be brought against a partnership, by naming its president as defendant, it was thereby intended to create any cause of action in favor of one partner against his copartners which did not exist by the substantive law of partnership. The same observation is true as to the inclusion of this same provision in section 13 of the General Associations Law.

It is necessary always, in considering an action under section 13 of the General Associations Law, to keep in mind its language and that of section 1919 of the Code of Civil Procedure. The right accorded by the Code, and by the present statute, is a right to maintain an action against the appropriate officer of the association which plaintiff could have maintained against *all* of his associates, only.

Again, the distinction between joint stock associations and the ordinary unincorporated group, is important. Although at common law, and indeed, unless otherwise provided by statute, joint stock associations are not legal entities and have no existence apart from their members (*People ex rel. Winchester* v. *Coleman et al.*, 133 N. Y. 279), nevertheless joint stock companies have been regarded as legal entities, at least for some purposes. (*People ex rel. Platt* v. *Wemple*, 117 N. Y. 136.) As a matter of fact joint stock companies have always been regarded as forming a distinct class of associations having some of the features both of partnerships and of private corporations. (30 Am. Jur., Joint Stock Companies, § 3.) Concededly they are usually organized for pecuniary profit and have property in the name of the company. Therefore decisions, where actions have been brought by or against joint stock associations, are not necessarily conclusive of the question herein presented.

Possibly, also, due to the great growth of labor unions and their recognition, both by Federal and State statutes, as separate entities for the purpose of collective bargaining, decisions in actions by or against them must be guardedly considered. It might well be that today a labor union, for the purpose of suit against it, would be treated as a separate entity, although *Kirkman* v. *Westchester Newspapers, Inc.* (287 N. Y. 373) can hardly be said to be an authority for such a holding, because there the labor union was treated as a separate entity, only to the extent necessary to permit a suit for libel to be brought by its officers in behalf of all the members. The rationale of that decision is that the good name of the union was something of value to all of its members, and solely by reason of their interest in the union's reputation, as such, its officers could maintain an action for libel in behalf of the whole membership.

The case upon which the Special Term relied for its decision, because the other authorities cited in the opinion stem from it, is *Westcott et al.* v. *Fargo* (61 N. Y. 542). The opinion of the General Term, Fourth Department, is found in 63 Barber 349, although the facts are more fully set forth in the report of the same decision in 6 Lansing 319. The opinion of Justice JOHNSON, in which Presiding Justice MULLIN and Justice TALCOTT concurred, indicates the ordinary conception of joint stock associations. In that case plaintiffs, who were shareholders of the American Merchants' Union Express Company, brought suit against Fargo, as its president, under the provisions of the act of 1849. The action was based upon the negligent loss of mink skins, the property of plaintiffs, which the express company received in New York City to be delivered to plaintiffs in Utica, N. Y. There, the ownership by plaintiffs of shares in the express company was advanced as a defense. The action was tried by a referee, who found in favor of plaintiffs. On appeal to the General Term the judgment was affirmed. A defense, that plaintiffs were shareholders, was rather summarily dismissed. In the concluding paragraph of Justice JOHNSON's opinion is the following: "It is no valid objection to the action that the plaintiffs are corporators or members of the company. The action is against the corporation." The Court of Appeals affirmed this decision, and likewise held that the fact that plaintiffs were shareholders of the express company did not defeat their action. It seems fairly clear that the company was treated as a separate entity, much the same as a corporation.

Passing, then, to a consideration of the status of unincorporated groups, other than joint stock associations, they fell into two general classes: First — Those organized for pecuniary profit in the sense of making money to be distributed among the associates (*Ranken* v. *Probey*, 131 App. Div. 328, 332); and, Second — which is by far the larger — those organized for social, moral, benevolent and kindred purposes. Concededly those coming within the second class do not constitute legal entities and have no separate existence apart from the membership. (*Ostrom* v. *Greene*, 161 N. Y. 353, 361.) Nor have those falling into the first group, except joint stock associations, been usually treated as separate entities. Conceivably, dependent on how far flung the business enterprise may be, and the character of its organization, an unincorporated group falling into the first class could well be treated as a distinct entity. The liability of members of groups in the first class is determined by the substantive law of partnership, while that of members of unincorporated associations in the second class is measured by the applicable law of agency. In the instant case, it seems reasonably apparent, from the meager information disclosed on this motion, that the probability is that the Meadowbrook Association was not organized for pecuniary profit, in the sense in which that term is used in differentiating the two groups.

On examining the decisions since the adoption of section 1919 of the Code of Civil Procedure in 1880, and continuing until the present day, it will be found that quite uniformly no recovery has been permitted in an action against an officer of an unincorporated association, except where plaintiff not only alleged, but proved, a cause of action, for which all of his associates would be liable to him. A few of these decisions are: *McCabe* v. *Goodfellow* (133 N. Y. 89); *Schouten* v. *Alpine* (215 N. Y. 225); *Peo. ex rel. Solomon* v. *Brotherhood of Painters* (218 N. Y. 115); *Browne* v. *Hibbets* (290 N. Y. 459); *Knopp* v. *Sherwood* (239 App. Div. 475, affd. 265 N. Y. 501); *Georgeson* v. *Caffrey* (71 Hun 472).

*McCabe* v. *Goodfellow* (*supra*) has been frequently cited where liability was sought to be enforced either under section 1919 of the Code of Civil Procedure, or under the present section 13 of the General Associations Law. In that case plaintiff, a lawyer, and a member of a law and order league, brought suit to recover for legal services rendered in furtherance of the objects of the league. His action was under section 1919 of the Code of Civil Procedure. He had a verdict, which was

affirmed by the General Term (61 Hun 619, reported in 15 N. Y. S. 377). In disposing of the defense pleaded, that plaintiff, as a member, could not maintain the action, the prevailing opinion of the General Term, written by Justice MARTIN, in which Presiding Justice HARDIN concurred, states: "We do not think the fact that the plaintiff was a member of the association was a bar to his maintaining an action for his services. *Westcott* v. *Fargo,* 61 N. Y. 542; *Saltsman* v. *Shults,* 14 Hun 256; *Fritz* v. *Muck,* 62 How. Pr. 73; *Sander* v. *Edling,* 13 Daly 238; *Winter* v. *Hamm,* 5 Civil Proc. R. 195." Justice MERWIN dissented in a sharp opinion, which is as follows: "Under section 1919 of the Code, an action in this form can be maintained only upon a cause of action ' for or upon which the plaintiff may maintain such an action or special proceeding against all the associates.' In the present case, I doubt very much the right of the plaintiff to make all the associates personally liable, for that is the effect of his claim. No such liability was in contemplation. The plaintiff was one of the associates, and is chargeable with knowledge of the situation. The funds were to be raised by voluntary contribution or subscription. The plaintiff himself seems to have been a subscriber to a guaranty fund. The special or central committee had no authority to pledge the credit of all who signed the constitution." Plaintiff's judgment was reversed by the Court of Appeals. The opinion was written by Judge MAYNARD, in which the other members of the court concurred. The essence of it is predicated on the above-quoted dissenting opinion at the General Term. It is to be noted that Judge MAYNARD makes the bald statement that an action against an unincorporated association can only be maintained where the complaint alleges, and it is proved, that the liability is one which the plaintiff can assert against all of his associates. While it is true that McCabe's membership in the association was not treated as an absolute defense, yet the Court of Appeals, in deciding the question of liability upon the principles of substantive law, determined that his membership in the association, with his familiarity of the circumstances of the association, required a finding that he knew that his associates did not intend to authorize the pledging of their individual credit for the payment of his services.

From what has already been said, which is not to be taken as a determination that the defense sought to be interposed herein, by amended answers, would defeat these causes of action, because such a determination can only be made when

all the facts and circumstances are known, and which are not disclosed upon this appeal, still it is clear that this defense may, depending on the character of the organization, whether or not plaintiffs were members, and the circumstances attendant upon their membership, operate to defeat the causes of action herein pleaded. In any event, at least the question is doubtful, and ought not to be determined on a mere motion to serve an amended pleading. On the contrary, the usual rule, applicable to a motion of this character, should be invoked, which would require the granting of the motion. (*Partridge* v. *Fidelity & Casualty Co.*, 213 App. Div. 8; *Newman* v. *Goldberg*, 250 App. Div. 431.) The fact that leave to amend is given does not adjudicate as to the materiality or the effect of the evidence to be offered under the proposed amended answer. (*Michigan Steamship Co.* v. *Am. Bonding Co.*, 109 App. Div. 55.) Neither by permitting the amendment is the defense sanctioned, either in substance or in form, because on a motion of this character it is not closely scrutinized. (*Paddock* v. *Barnett*, 88 Hun 381.)

For the foregoing reasons, although the appellant succeeds, since costs could have been allowed as a condition for granting the amendment, the order should be reversed on the law and facts, without costs, and the motion granted, without costs.

All concur. Present — TAYLOR, P. J., DOWLING, HARRIS, LARKIN and LOVE, JJ.

Order so far as appealed from reversed on the law and facts, without costs of this appeal to any party, and motion granted, without costs.