Kent GNEITING et al., Plaintiffs,

v.

Peter J. TAGGARES et al., Defendants.

Civ. No. 4–71–31.

United States District Court,
D. Idaho.

Feb. 26, 1973.

Jerome H. Torshen, Larry H. Eiger, and Harry H. Fortes, Torshen, Fortes & Eiger, Ltd., Chicago, Ill., and Fred J. Hahn, Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, Idaho, for plaintiffs.

Blaine F. Evans, Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho, and Minnick, Hahner & Hubbard, Walla Walla, Wash., for defendants Taggares, Abend, Ram, Chef-Reddy Foods Corp., Ida. Potato Packers of Ida. & Ida. Potato Packers of N. Y.

A. S. Frankenstein, Frankenstein, Lewis & Feierberg, Chicago, Ill., and Frank E. Chalfant, Jr., Boise, Idaho, for defendant S. Freidman & Sons, Inc.

Alan H. Silberman, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., and Jess B. Hawley, Jr., Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for defendant Freehling & Co.

### MEMORANDUM OF DECISION AND ORDER

FRED M. TAYLOR, District Judge.

The motion of plaintiffs Kent Gneiting, R. Von Walker, Oscar Ellsworth and Ronald Ball for an order authorizing maintenance of this cause as a class ac-

tion has been presented to the court on the existing record, oral arguments and briefs of counsel.

The complaint alleges a conspiracy in violation of Title 15 U.S.C. §§ 1 and 2. The named plaintiffs have commenced this action for themselves and are requesting this court to make them the representatives of all other persons similarly situated. It is the contention of plaintiffs that they acquired a "short or hedge" position in May, 1971 on Idaho Russet potatoes and because of the defendants' alleged conspiracy were required to fulfill such short contracts by purchase or settlement at manipulated and artificially set prices. It is further alleged that they also had on hand stocks of fresh 1971 Idaho Russet potatoes which they were forced to sell at prices below those which would have existed but for the alleged conspiracy to manipulate the supply and demand.

In order to qualify as a class action under Rule 23, the action must meet all four of the requirements set out in Rule 23(a), which are: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to meeting the above requirements, the action must also satisfy Rule 23(b)(3) which provides that once the prerequisites of Rule 23(a) are satisfied, the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The determination of whether to authorize the maintenance of a class action is one which must be done by the court in a practical and realistic way based on an informed understanding of what is actually involved in the litigation. There is no mechanical or fixed formula which can be applied in the abstract to make this finding. This court is of the opinion that the following language in City of New York v. International Pipe and Ceramics Corporation, 410 F.2d 295, 298 (2nd Cir. 1969) lays the foundation from which a trial court should proceed in reaching its determination:

"The key words of Rule 23 are 'fair and efficient adjudication'. This issue should not be decided in an abstract or academic manner but rather in a practical and realistic way by a trial judge who has knowledge of the actual problems presented in the courtroom by these multi-plaintiff, multi-defendant cases. In theory and in an initial offhand reaction, it is tempting to say: why not let everyone who asserts a somewhat related grievance come into a common arena to resolve their controversy? However, on a moment's reflection, it should be apparent that the capacities of judges and jurors to absorb the factual situations thus presented are finite and that courthouses are not coliseums. . . . Contrasted against this obvious difficulty are the equally obvious benefits intended to be bestowed by the Rule 23 class action which would obviate the necessity for many —possibly hundreds of—separate actions where the issues are similar."

An analysis of plaintiffs' complaint shows that it is being brought on the behalf of two distinguishable groups: (1) A "short" trader class consisting of persons who held short positions in May, 1971 potato futures, and (2) a grower-shipper class consisting of certain growers and shippers who marketed May, 1971 potatoes after May 29, 1971.

The complaint alleges the existence of a conspiracy which: (1) Affected the futures market by monopolizing and manipulating the price of May, 1971 potato

futures on the Mercantile Exchange, and (2) affected the cash market by monopolizing and controlling the supply of fresh potatoes which the plaintiffs marketed after May 29, 1971.

■ In order for these plaintiffs to prevail in this private antitrust suit, they must allege facts from which it can be determined that there has been a conspiracy, plus damages which they have suffered as a proximate cause of such conspiracy. Plaintiffs' major premise for an order allowing maintenance of this cause as a class action is bottomed on the contention that the core issue or common question is the conspiracy and economic effect it had on the market. In Burnham Chemical Co. v. Borax Consolidated, 170 F.2d 569 (9th Cir. 1948), the court in dealing with an alleged conspiracy to violate Title 15 U.S.C. § 15 stated the following at 571 concerning this issue:

> "Where (as here) a private suitor asserts a claim under the Sherman Act for damages, *the gravamen of the complaint is not the conspiracy.* The damage for which a recovery is allowable *is the damage which the suitor has suffered as the result of acts of the conspirators* directed against him and committed in the course of the conspiracy and in furtherance of its purpose." [emphasis added]

■ Whether or not a conspiracy existed in either the "futures" or "cash" market does not establish its predominance over the more expansive issue of whether, and in what circumstances, individual plaintiffs can assert that the alleged violation proximately caused an injury to them. It further appears to this court that the difficulties likely to be encountered in the management of this action as a class action greatly exceed the benefits that may be expected from its maintenance as such. See Lah v. Shell Oil Co., 50 F.R.D. 198, 200 (S.D. Ohio 1970). Within this same framework, the court notes, with a great deal of apprehension, that plaintiffs are requesting a jury. The following language in Schaffner v. Chemical Bank, 339 F.Supp. 329 (S.D.N.Y.1972) expresses accurately and completely this court's view on this subject:

> " . . . the notion of utilizing a jury trial in a class suit containing the varied problems certain to abound herein, is enough to chill any further discussion of the required superiority of a class claim over other available methods for the fair and efficient adjudication of the controversy. Such a trial, whether one trial or the multiple mini-trials probably required, would withdraw all other usefulness for years to come of the federal judicial personnel involved. Where one could muster jurors willing to devote themselves so indefinitely in time from their accustomed tasks is puzzling. And one might relevantly ask—what public interest would be served by devoting the public's facilities in this way and what just purpose requires such a colossal marshalling of judicial resources and their supporting personnel?"

Finally, it should be noted that this is not the type of a case where failure to uphold a class action would terminate the litigation. The four named plaintiffs are seeking substantial damages and this, coupled with the statutory allowance for attorneys' fees for a successful plaintiff, is certainly sufficient to warrant maintenance of the suit on an individual basis.

After fully considering this matter, it is the opinion of this court that the questions of law or fact common to the members of the class do not predominate over questions affecting only individual members; that the claims of the representative parties are typical of the claims of some of the class, but they are not typical of all members of the proposed class; that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy, and the difficulties likely to

be encountered in the management of this case as a class action outweigh the benefits that might be expected from its maintenance as such.

Accordingly, it is ordered that the motion of plaintiffs for an order authorizing maintenance of a class action be, and the same hereby is, denied.